NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELO RUBANO,         Plaintiff,   v.   JERSEY CITY MUNICIPAL UTILITIES AUTHORITY, CITY OF JERSEY CITY, and TOM KANE,         Defendants. | Civil Action No.: 06-3058 (JLL)   OPINION |

**LINARES, District Judge.**

The instant matter comes before the Court on the July 23, 2007 and August 24, 2007 motions of Defendants Jersey City Municipal Utilities Authority (the "MUA"), City of Jersey City ("Jersey City"), and Tom Kane ("Kane") (collectively "Defendants") for summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth herein, Defendants' motions for summary judgment are denied with respect to Plaintiff's § 1983 claim, but granted with respect to all other claims.

### INTRODUCTION

In July, 2004, the MUA hired Angelo Rubano ("Plaintiff" or "Rubano") as a Compliance Officer. (Am. Compl. at ¶6.) He claims that unnamed individuals at the MUA, Jersey City, and Kane were conspiring to act against his supervisor, Jennifer Bloom ("Bloom"), and that he was instructed not to assist Bloom. (Id. at ¶¶8, 10.) Rubano claims that he knew of gender-related

1

harassment directed at Bloom, that he refused to participate in the harassment, and that he spoke to Kane on three or more occasions concerning the alleged harassment of Bloom. (Id. at ¶¶11-14.)

At some point, apparently after his discussions with Kane, Rubano was called into Kane's office and told by an individual named Jerry Letiza, presumably an employee of Jersey City or the MUA, that Rubano would have to obtain a New Jersey driver's license in order to continue his employment with the MUA; this requirement was apparently set down in a memo from Kane to Rubano that Rubano received at a later date. (Id. at ¶¶15, 17.) Rubano asserts that at the time he possessed a California driver's license and that his job responsibilities did not require driving. (Id. at ¶16.)

Rubano's Amended Complaint also asserts that he spoke with both Bloom and Personnel Supervisor Laurie Lukaszyk, who told him that he was not required to obtain a New Jersey driver's license as part of his job. (Id. at 17-18.) Rubano was terminated on July 7, 2005, after being warned for "several weeks" of the license requirement. (Id. at 20; Def. Statement of Uncontested Facts at ¶¶1, 3; Pl. Resp. to Statement of Uncontested Facts at ¶3.)

During Rubano's employment at the MUA, two employee "Policies and Procedures" manuals were released by the MUA that applied to Rubano's job category (hereinafter "2004 Manual" and "2005 Manual"). (Def. Statement of Uncontested Facts at ¶3.) Rubano received the 2004 Manual and executed a document indicating receipt of the manual and an additional document entitled "Employee's Acknowledgment Of Receipt And Agreement To The JCMUA's Alternative Dispute Resolution Procedures." (Def. Statement of Uncontested Facts at ¶6-7; Pl. Resp. to Statement of Uncontested Facts at ¶6-7.) Both the 2004 Manual and the 2005 Manuals

contained identical language detailing a three-step, mandatory dispute resolution process including arbitration as "Phase II." (Def. Statement of Uncontested Facts at ¶5; Pl. Resp. to Statement of Uncontested Facts at ¶5.)

Rubano instituted this suit on July 5, 2006, filing an Amended Complaint that same day, and alleging violations of the New Jersey Law Against Discrimination ("NJLAD"), the New Jersey Conscientious Employee Protection Act ("CEPA"), breach of contract with respect to the Manuals, a due process claim under 42 U.S.C. § 1983, wrongful termination, and negligent hiring and retention. (See generally Am. Compl.) Defendants answered the Amended Complaint, and this motion for summary judgment, joined by all defendants, followed on July 23, 2007.

## DISCUSSION

Defendants move for summary judgment based on a single proposition: that Rubano agreed to arbitration, requiring the dismissal of his Amended Complaint and referral of this matter to arbitration. (Def. Br. at 2.) Plaintiff argues that there was no clear consent by him to arbitration, that the 30-day time limit for initiating arbitration is invalid under New Jersey contract law, and that a breach of the Manuals by the MUA excused Rubano from adhering to the Manual's arbitration provision. (Pl. Opp. Br. at 6-7.) Plaintiff also claims that his § 1983 claim is not subject to arbitration. (Id. at 8.)

**A.     Summary Judgment Standard**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine, factual issue compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**B.     The Leodori Test for Enforcing Employee Arbitration Agreements**

The parties posit, and this Court concurs, that the proper test to be applied on Defendant's motion was announced by the New Jersey Supreme Court in Leodori v. CIGNA Corp. 814 A.2d 1098 (N.J. 2003). The test applied in Leodori, a case concerning a employee suit under CEPA, evaluates an arbitration agreement under state contract law and asks (1) whether "the relevant waiver of rights provision reflect[s] an unambiguous intention to arbitrate" and (2) whether the record indicates clear agreement to the relevant provision. Leodori, 814 A.2d at 1104; Sarbak v. Citigroup Global Markets, Inc., 354 F. Supp 2d 531, 537 (D.N.J. Dec. 21, 2004) (Linares, J.).

This Court finds that Defendants have met their burden with regard to the <u>Leodori</u> test with respect to the 2004 Manual. The 2004 Manual contains the following provision, the pertinent portions of which are set forth as follows:

> 6.16 ALTERNATIVE DISPUTE RESOLUTION PROCEDURES
>
> To help maintain a positive work environment, the JCMUA has established an Aletrnative Dispute Resolution Procedure Program ("ADR" or "Program") for all matters involving employee disputes and discipline. This Program consists of three processes, which are mandatory and were designed to provide employees with an effective arena for resolving work-related conflicts while improving the lines of communications . . . .
>
> If an employee is not satisfied with the results of the Internal Meeting and the issue falls within the scope of the Arbitration Policy, the employee may request arbitration, which is the last step of the Alternative Dispute Resolution Procedure Program. The Arbitration Policy was designed as a faster, less expensive substitute for going to court. Mutual promises by both the employee and the employer to arbitrate employment related legal claims is a term and condition of an employee's employment and arbitration must be used rather than going to court to enforce legal rights and claims (or going to a government agency which acts like a court in judging claims).
>
> The agreement to arbitration applies to serious employment-related disagreements and problems, which are those that concern a right, privilege, or interest recognized by applicable law. Such serious disputes involve claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Security Act of 1974, the Fail Labor Standards Act, the Rehabilitation Act of 1973, the Americans With Disabilities Act, the federal Family and Medical Leave Act, [CEPA], the [NJLAD], New Jersey Leave Act, New Jersey Prevailing Wage Act, New Jersey Wage Payment Law, New Jersey Wage and Hour Law, and any other federal, state, or local statute, regulation, or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment. Where New Jersey law provides that a government agency may decide questions of law related to employment discrimination or wage claims, then the

> agreement of the employee and the employer is that arbitration must be used instead of a government agency hearing to decide the claim or going to court and having a jury. . . .
>
> To begin the Arbitration process, an employee should submit a demand for arbitration to the Director of Human Resources within thirty (30) calendar days after receiving either the Internal Meeting or Mediation decision. The Arbitration Rules and Procedures can be obtained from [sic] Director of Human Resources. . . .
>
> The Arbitration Policy of our ADR procedure makes arbitration the required and exclusive forum for the resolution of all disputes relating to or arising out of employment that are not resolved through the Internal Meeting process or the Mediation procedure, to the fullest extent permitted by applicable law.

(Def. Cert. Ex. C.) In addition to the form signed by Rubano indicating receipt of the 2004 Manual, Plaintiff also signed the aforementioned "Employee's Acknowledgment Of Receipt And Agreement To The JCMUA's Alternative Dispute Resolution Procedures" (the " 2004 Acknowledgment"). (Def. Statement of Uncontested Facts at ¶6-7; Pl. Resp. to Statement of Uncontested Facts at ¶6-7.) The terms of the 2004 Acknowledgment relevant to the Leodori inquiry are:

> I understand that by accepting employment and being able to receive increases in compensation and benefits, I am agreeing to the important term and condition of my employment that I will use JCMUA's internal and external employment dispute resolution process to resolve legal claims against JCMUA—therefore, rather than go to court or to a government agency for a hearing to decide my legal claim, I will submit my employment related legal claims except workers' compensation and unemployment compensation to final and binding neutral third party arbitration. I understand further that this term of my employment replaces and supercedes any prior agreement concerning this term and cannot be changed in any way except [writings signed by the employee and the Executive Director] . . .
>
> I understand the agreement to arbitrate applies to potential

6

> claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Security Act of 1974, the Fail Labor Standards Act, the Rehabilitation Act of 1973, the Americans With Disabilities Act, the Federal Family and Medical Leave Act, [CEPA], the [NJLAD], New Jersey Leave Act, New Jersey Prevailing Wage Act, New Jersey Wage Payment Law, New Jersey Wage and Hour Law, and any other federal, state, or local statute, regulation, or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment.  I further understand that the agreement to arbitrate also applies to potential claims, demands, or actions that may be brought to a government agency authorized to decide questions of law related to employment discrimination or wage claims.
>
> By signing this form, I affirm that the Alternative Dispute Resolution Procedures have been fully explained to me and that I understand them.

(Def. Cert. Ex. F.)  The 2004 Acknowledgment notably repeats the full list of potential claims covered by the 2004 Manual with only a typographical alteration.  Plaintiff does not contest whether the 2004 Acknowledgment or 2004 Manual evince an unambiguous intent to arbitrate or whether Plaintiff clearly assented to arbitration.  Leodori, 814 A.2d at 1104.  This Court finds that the portions of the 2004 Manual, received by Plaintiff, and the 2004 Acknowledgment, signed by Plaintiff, meet the requirements of Leodori because the arbitration policy is set out clearly and emphatically, requiring arbitration in all apparent cases if legally permissible.  The policy sets out in no uncertain detail that arbitration is the agreed-to dispute resolution method, and that the various legal claims subject to arbitration are not only set forth fully in the 2004 Manual, but as noted supra, are repeated verbatim in the 2004 Acknowledgment.  The 2004 Manual and 2004 Acknowledgment function so as to create an enforceable arbitration agreement under New Jersey law.  Id. at 1104; Garfinkel v. Morristown Obstetrics & Gynecology Assocs.,

P.A., 773 A.2d 665, 670 (N.J. 2001); Sarbak, 354 F. Supp. 2d at 538-39.

Rubano challenges the enforceability of the MUA arbitration policy based not on the 2004 Manual or 2004 Acknowledgment, but on the failure of the MUA to obtain proof that Rubano received the 2005 Manual or executed an acknowledgment of the arbitration policy in 2005. (Pl. Opp. Br. at 6.) Defendants admit that Rubano, at his deposition, indicated that he never received the 2005 Manual, and have not provided this Court with a signed acknowledgment of the 2005 Manual's arbitration policy, as they have for 2004. (Def. Statement of Uncontested Facts at ¶8.) This Court, therefore, construes Defendants' motion as one relying on the 2004 Manual and 2004 Acknowledgment.

This Court finds that while the 2004 Manual and 2005 Manual expressly disclaim any contractual nature, the 2004 Acknowledgment operates in an entirely different legal manner. (Def. Cert. Ex. C, D.) It states that the requirement to submit employment claims to arbitration becomes part of the terms and conditions of employment upon execution. (Id. at Ex. F.) The effect of the 2004 Acknowledgment on the terms and conditions of Rubano's employment, therefore, was unaffected by the release of the 2005 Manual, even though that document purported to supercede the 2004 Manual. (Id. at Ex. D.) As an item incorporated only by reference in the 2004 Acknowledgment, the efficacy of any derogation of the 2004 Manual as an employee guide had no effect on its use with respect to providing a description of the arbitration policy assented to by Rubano in the 2004 Acknowledgment. See Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co., 678 A.2d 699, 705 (N.J. 1996) (finding that contract and document incorporated by reference therein form one integrated agreement). Additionally, this Court notes that the stated public policy of New Jersey is to interpret arbitration agreements so as to find

8

enforceability once the requirements of unambiguity and clear assent have been met.  Sarbak, 354 F. Supp 2d at 537.  Plaintiff's contention, therefore, that any failure to assent to the 2005 Manual by Rubano causes his 2004 Acknowledgment of the arbitration policy to have no effect is unavailing.  With respect to the enforceability of the arbitration requirement, this Court finds that Defendant is entitled to judgment as a matter of law and that there are no genuine issues of material fact at issue with regard to dismissal of Rubano's state law claims.  Fed. R. Civ. P. 56(c).

**C.     Contractual Modification of Statute of Limitations**

Plaintiff argues, without citing any authority, that the 2004 Acknowledgment's requirement that claims be submitted to arbitration within thirty days violates New Jersey contract law because it shortens the statute of limitations.  (Pl. Opp. Br. at 6.)  New Jersey courts have rejected the argument that a contract is invalid if it has the effect of reducing the statute of limitations that would otherwise apply.  Eagle Fire Prot. Corp., 678 A.2d at 704 ("[c]ontract provisions limiting the time parties may bring suit have been held to be enforceable, if reasonable"); Trinity Church v. Lawson-Bell, 925 A.2d 720, 727 (N.J. Super. Ct. App. Div. 2007) ("Such provisions are accepted by the courts as long as they do not violate public policy."). Plaintiff does not contest the provsion's reasonability, and the only public policy argument brought forth by Plaintiff's brief is that a contract that impairs the rights of one party more than another is unenforceable due to a lack of fairness. (Pl. Opp. Br. at 6.)  Absent an argument from Rubano about fraud, duress, or unconscionability, this Court construes Rubano's argument as one going to the sufficiency of consideration, and finds that New Jersey courts have also rejected such a proposition.  In re Estate of Roccamonte, 808 A.2d 838, 844 (N.J. 2002).

**D.     MUA's Purported Breach of the 2004 or 2005 Manuals**

Under New Jersey law, an employee manual may constitute a contract modifying the employer-employee relationship if certain factors are satisfied. Varallo v.. Hammond, 94 F.3d 842, 845 (3d Cir. 1996). The "key consideration" in such an analysis is the reasonable expectations of the employees, but other factors include "definiteness and comprehensiveness of the termination policy and the context of the manual's preparation and distribution." Witkowski v. Thomas J. Lipton, Inc., 643 A.2d 546, 550 (N.J. 1994). The employment manual, however, must make its representations "absent a clear and prominent disclaimer." Witkowski, 643 A.2d at 550.

This Court finds that the 2004 Manual, received and relied upon in this motion by Plaintiff, contained a clear and prominent disclaimer in its frontmatter and that the "Employee's Acknowledgment of Receipt of Manual" signed by Rubano attests that he understood that "the contents of the manual are for information only and are not intended to create a contract." (Def. Cert. Ex. C, E.) The combination of the disclaimer and the signed waiver by Rubano of the 2004 Manual's potential as a contractual device combine to defeat both any reasonable expectation of an employee that the 2004 Manual constituted a contract and that the express waiver it contained, "This Manual is not a contract, express or implied, guaranteeing employment for any specific duration," satisfies the clear and prominent disclaimer requirement. Witkowski, 643 A.2d at 550; Def. Cert. Ex. E at v. Plaintiff's argument that his failure to comply with the arbitration policy was excused by breach of the 2004 Manual fails, therefore, because the 2004 Manual by itself did not constitute a contract modifying the terms and conditions of employment.

E.     **Arbitration of Rubano's § 1983 Claim**

Finally, Rubano contends that under McDonald v. City of West Branch he should not be required to submit any of his claims to arbitration, despite his 2004 Acknowledgment to the policy stated in the 2004 Manual. 466 U.S. 284, 292 (1984). Rubano posits that since McDonald forecloses any duty on his part to arbitrate his § 1983 claim, judicial economy requires that all of his claims be retained in this Court. (Pl. Opp. Br. at 8.)

This Court agrees with Rubano that he is not required by law to submit his § 1983 claim to arbitration. McDonald, 466 U.S. at 292; McLendon v. Continental Group, Inc., 602 F.Supp. 1492, 1503, 1504 n.4 (D.N.J. Jan. 22, 1985). While McDonald held only that an arbitration decision on a § 1983 claim lacks preclusive effect, its statement "that in a § 1983 action, an arbitration proceeding cannot provide an adequate substitute for a judicial trial," has been interpreted to mean that certain federal statutory claims may not be subject to dismissal for failure to abide by an arbitration agreement. McDonald, 466 U.S. at 292; Kovats v. Rogers, 749 F.2d 1041, 1049 (3d Cir. 1984); McLendon, 602 F.Supp. at 1503. This Court finds that judicial economy would best be served by honoring Rubano's right to present his § 1983 claim before a court of law, rather than dismissing it under the arbitration clause. McLendon, 602 F.Supp. at 1503.

## CONCLUSION

For the forgoing reasons, this Court grants Defendant's motion for summary judgment as to Plaintiff's state law claims in their entirety, but denies Defendant's motion for summary judgment as to Plaintiff's § 1983 claim.  An appropriate Order accompanies this Opinion.


DATED: February 28, 2008                                    /s/ Jose L. Linares
                                                                              United States District Judge